FILED
2014 JUL 24 A 8:26
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 13-23757-GLT |
| | : | |
| JACK A. HOMITZ and | : | |
| SUSAN M. HOMITZ, | : | Chapter 11 |
| | : | |
| Debtors. | : | Related Doc. Nos. 63, 101, and 120 |
| | : | |

**MEMORANDUM OPINION**

    This matter is before the Court upon the *Amended Plan of Reorganization Dated December 24, 2013* [Doc. No. 63] (the "Amended Plan") filed by Jack and Susan Homitz (the "Debtors") and the objections raised by Beneficial Consumer Discount Company ("Beneficial"). The Court is presented with the issue of whether the Debtors may reamortize their home mortgage loan and lower the interest rate without the consent of the secured creditor. In this instance, the Debtors propose to unilaterally reduce the interest rate on Beneficial's secured claim from 7.49% to 4%. For the reasons stated herein, the Court finds that the proposed modification is not permitted by 11 U.S.C. § 1123(b)(5) and therefore the Amended Plan cannot be confirmed pursuant to section 1129(a)(1).

I.

    The Debtors filed a voluntary chapter 11 bankruptcy case on September 3, 2013. Beneficial holds two claims against the Debtors which are secured by mortgage liens against their residence located at 121 Dana Drive in New Brighton, Pennsylvania (the "Property"). The Debtors initially scheduled Beneficial's first secured claim in the amount of $134,164, and the second mortgage was listed in the amount of $15,381. (See Doc. No. 1, Sch. A).

    On September 25, 2013, the Debtors filed their *Chapter 11 Small Business Plan of Reorganization* [Doc. No. 28] (the "Initial Plan") in which they proposed to combine the two

mortgages into one new mortgage with a principal balance of $149,545. The Debtors proposed to repay the obligation over thirty (30) years with interest accruing at the rate of 4.5%.

On December 31, 2013, Beneficial filed a secured claim in the amount of $144,790.14 relating to the first mortgage. (See Proof of Claim No. 11). In addition to the balance owed, Beneficial stated that the mortgage note included a fixed interest rate of 7.49%. (See id.). Beneficial also filed a proof of claim regarding the second mortgage in the amount of $15,381.11. (See Proof of Claim No. 2). The Debtors have not objected to either claim.

On October 28, 2013, Beneficial filed its objection to the Initial Plan [Doc. No. 48] (as amended on November 11, 2013 at Doc. No. 52, the "Objection"). The Objection was filed solely with respect to the first mortgage. Beneficial objected to confirmation because it proposed to modify Beneficial's claim in contravention of section 1123(b)(5) by combining the two mortgages into one new mortgage, reducing the interest rate on the mortgage note from 7.49% to 4.5%, and reamortizing the mortgage note over thirty (30) years. (See Doc. No. 28, at Section IV.2). Pursuant to an Order dated December 11, 2013 [Doc. No. 61], the Court directed the Debtors to address the Objection by filing an amended plan by December 24, 2013.

On December 24, 2013, the Debtors filed their Amended Plan. The Amended Plan proposed to treat Beneficial's first and second mortgage separately, rather than combine them as proposed in the Initial Plan. (See Doc. No. 63, Section IV.2). Both mortgages were classified as Class 2 claims which are impaired under the Amended Plan.

To address Beneficial's objections, the Debtors sought to reamortize the scheduled amount of the first mortgage over twenty-two (22) years and reduce the contract interest rate from 7.49% to 4.0%. (See id.). Through these changes, the Debtors proposed to pay Beneficial a monthly principal and interest payment of $764.98, representing an approximate reduction of $193 from the amount required under the loan documents. (See Proof of Claim No. 11).

With respect to the second mortgage, the Amended Plan reamortized the loan at an interest rate of 4.0% over the span of thirty years. (See Doc. No. 63, Section IV.2). This extended the loan's maturity date by approximately 16 years and reduced the monthly payment by approximately $140. (See Proof of Claim No. 2).

Beneficial filed an untimely objection to the Amended Plan on January 31, 2014 with respect to the first mortgage [Doc. No. 75] (the "Amended Plan Objection"). The Amended Plan Objection raised substantially similar objections to those set forth in the original Objection because, as stated by Beneficial, the Amended Plan still proposed to modify the mortgage on Debtors' principal residence in violation of section 1123(b)(5). (See Doc. No. 75). Beneficial did not file a written objection with respect to the proposed treatment of the second mortgage.[1]

The Amended Plan was approved by two of the four impaired classes of creditors. [Doc. No. 73]. The Debtors did not receive any ballots from creditors in Class 2, which included the claims of Beneficial. As a result, Class 2 did not accept the Amended Plan pursuant to section 1126.

The Court held a hearing to consider confirmation of the Amended Plan on April 29, 2014. At the conclusion of the confirmation hearing, both parties consented to the referral of the matter to mediation for the purpose of exploring a consensual loan modification agreement.

Despite the best efforts of the mediator and the parties, the mediation was unsuccessful. The parties were unable to reach agreement on a consensual loan modification that would resolve Beneficial's Amended Plan Objection. Thereafter, the parties agreed to return the matter to this Court pursuant to the *Consent Order of Parties Removing Matter from Mediation* [Doc. No. 116] entered on June 11, 2014.

II.

---

[1] Because the second mortgage is not at issue and confirmation is denied on other grounds, the Court makes no finding as to whether the proposed treatment of this claim complies with the requirements of section 1129.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Upon consideration of the Amended Plan, the briefs filed by each party, and the statements made during the Court hearings, the matter is now ripe for adjudication.

A.

Section 1123(b)(5) of the Bankruptcy Code is aptly named the "anti-modification" provision because it prevents a plan proponent from modifying the claim of a secured creditor holding a security interest solely in the debtor's principal residence. See 11 U.S.C. § 1123(b)(5) ("[A] plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence…."). As one court has stated, "the anti-modification provision precludes debtors from 'proposing plan provisions which would unilaterally rewrite the terms of a home loan – for example, by reducing the principal balance to the current value of the home, lowering the interest rate, or providing for a new amortization schedule.'" In re Haake, 483 B.R. 524, 533 (Bankr. W.D. Wis. 2012) (quoting In re Wofford, 449 B.R. 362, 364 (Bankr. W.D. Wis. 2011)).

Considering that sections 1123(b)(5) and 1322(b)(2) mirror each other, the extensive analysis of section 1322(b)(2) applies with equal strength in chapter 11 proceedings where section 1123(b)(5) is implicated.[2] The United States Supreme Court has held that section 1322(b)(2) prevents the debtor from modifying a claim when it is secured only by the debtor's principal residence. Nobelman v. Am. Sav. Bank, 508 U.S. 324, 331-32; 113 S. Ct. 2106; 124 L. Ed. 2d 228 (1993). Quite simply, a plan that unilaterally changes the terms of a pre-petition

---

[2] To avoid confusion, the Court notes that sections 1123(b)(5) and 1322(b)(2) are both anti-modification provisions that apply to debtors under chapters 11 and 13, respectively.

4

mortgage contract violates section 1123(b)(5) and necessarily fails to comply with section 1129(a)(1) of the Bankruptcy Code, rendering such plan unconfirmable.

The threshold question in assessing whether a debtor may modify the rights of a secured creditor is whether the creditor has a security interest in the debtor's principal residence. Section 101(13A) of the Bankruptcy Code defines a debtor's principal residence as "a residential structure if used as the principal residency by the debtor … without regard to whether that structure is attached to real property…." 11 U.S.C. § 101(13A). Beneficial claims the Property is the Debtors' primary residence, and the Debtors' voluntary petition and bankruptcy schedules support this conclusion. In the absence of any proof to the contrary, the Court finds that the Property constitutes the Debtors' principal residence.

In this instance, the Amended Plan undoubtedly modifies the secured claim held by Beneficial. The Amended Plan proposes to "reamortize the first mortgage in the amount of $134,164 at 4.0% over twenty two (22) years with monthly P/I payments of $764.98 per month commencing 30 days following confirmation of their Plan." (Amended Plan, at Section IV.2). Assuming that both the outstanding loan balance and the maturity date are consistent with Beneficial's proof of claim,[3] the interest rate proposed in the Amended Plan materially deviates from the original loan documents. A reduction of the interest rate, on its own, is sufficient to constitute a modification of the loan terms. Through this one change, the monthly payments Beneficial can expect to receive are substantially reduced and its overall yield is diminished.

The Debtors are not afforded the opportunity to unilaterally lower the interest rate charged on the mortgage note. While the Bankruptcy Code gives debtors the ability to modify

---

[3] For the purpose of this discussion, the Court assumes the Amended Plan does not modify any other terms in Beneficial's loan documents. Based upon a review of the record, a dispute exists as to whether the Amended Plan provides for all amounts owed to Beneficial as set forth in Proof of Claim No. 11. In particular, the Debtors suggest the claim is overstated due to certain "statements/credit report balances asserted by Beneficial prepetition." Although the Debtors have not substantiated this argument (nor have they objected to Beneficial's claim), it is not necessary for the Court to decide the issue in light of its other findings herein.

many types of loan obligations, the alteration of a loan secured only by the debtor's residence is not one of them. See 11 U.S.C. § 1123(b)(5) (permitting the debtor to modify the rights of secured creditors whose claims are secured by anything other than the debtor's principal residence); see also In re Seatco, Inc., 259 B.R. 279, 287 (Bankr. N.D. Tex. 2001) ("While § 1123 does except a secured creditor whose claim is secured by the debtor's principal residence from its terms, there is no exception for secured creditors who advanced monies pursuant to a prepetition revolving line of credit."). Congress determined that such contracts are sacrosanct in the context of a plan, and the Court is without discretion to reach a contrary conclusion. See In re Dailey, 289 B.R. 707, 709 (Bankr. C.D. Ill. 2003) ("[T]he legislative history clearly indicates the Congressional intent to amend [section 1123(b)(5) of] Chapter 11 to include the same anti-modification provision applicable to Chapter 13 plans under § 1322(b)(2) and the Supreme Court's decision in Nobelman."). Further, the Debtors have not cited any cases that permit a debtor to modify the mortgage on their primary residence despite the clear language in section 1123(b)(5).

The Debtors' arguments in support of the Amended Plan are unavailing. The Debtors first argue that the plurality opinion by the United States Supreme Court in Till v. SCS Credit Corp. permits the unilateral modification of the interest rate paid to a secured creditor.[4] See Till, 541 U.S. 465; 124 S.Ct. 1951; 158 L.Ed.2d 787 (2004). They claim this can occur when the debtor attempts to modify a secured claim that accrues interest at above-market rates.

The Debtors' application of Till is inappropriate because it did not involve the modification of a loan secured by the debtor's principal residence. Rather, the Supreme Court addressed the modification of a retail installment contract for a truck within a chapter 13

---

[4] Curiously, the Debtors assert that "they are not 'cramming down'" Beneficial's claim, yet they rely upon the reasoning of Till to reamortize the loan. (See Doc. No. 101 at p. 6). The term "cram-down" refers to an attempt to confirm a plan without the consent of an impaired class of creditors under section 1129(b). Because creditors in Class 2 failed to accept the Amended Plan, the Debtors have no hope of confirming the Amended Plan without resorting to a cram down. See 11 U.S.C. §§ 1129(a)(8), (b)(1).

proceeding. The Court finds no language in Till that would override the anti-modification provisions of sections 1322(b)(2) or 1123(b)(5). To the contrary, the Supreme Court recognized that the debtor's ability to modify the number, timing, or amount of the installment payments was directly related to the fact that the collateral consisted of personal property. See Till, 541 U.S. at 475.

The Debtors' assertions would be accurate if they were effectuating a cram down of a loan subject to modification, but this is not the case here. Section 1123(b)(5) prevents the Debtors from effectuating a cram down of the first mortgage, and Beneficial did not consent to a modification of the loan. Without Beneficial's consent and absent the statutory right to modify the loan, the Debtors' plan cannot be confirmed unless it incorporates the original loan terms. So long as the Amended Plan violates the anti-modification provision in section 1123(b)(5), the Debtors do not satisfy section 1129(a)(1) and have not proposed a confirmable plan. See 11 U.S.C. § 1129(a)(1); see also, In re Van Eck, 425 B.R. 54, 67 (Bankr. D. Conn. 2010) (A "plan cannot be confirmed unless it complies with the applicable provision[s] of this title, including section 1123(b)(5).") (internal citation omitted).

B.

The Debtors next argue that a non-conforming plan (i.e. one that does not comply with the Bankruptcy Code) can be confirmed when the affected creditor fails to assert a timely objection. In support of this proposition, the Debtors rely upon the holding in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260; 130 S. Ct. 1367; 176 L. Ed. 2d 158 (2010). Unfortunately for the Debtors, the case is easily distinguishable and ultimately unsupportive of their arguments.

Espinosa stands for the legal proposition that a final order remains binding upon the parties who had notice of an underlying legal error and failed to timely object or appeal. See Espinosa, 559 U.S. at 275. In Espinosa, the bankruptcy court confirmed a chapter 13 plan that

7

proposed to discharge certain student loan debt without first obtaining a determination that such debt created an undue hardship. The Supreme Court held that the debtor's failure to initiate an adversary proceeding to determine undue hardship was error, but it did not rise to the level of a due process violation. Instead, the Court noted that the creditor received actual notice of the debtor's plan and the proposed treatment of its claim. Because the creditor failed to object to the plan or appeal the confirmation order, the Court determined that the underlying error was insufficient to challenge the finality of the confirmation order.

While it is true that a confirmation order constitutes a final order that is binding on a debtor and all creditors,[5] the Debtors have yet to obtain such an order in this case. Unlike Espinosa, where the creditor first raised its objection years after the confirmation order became final, this Court had not even considered plan confirmation, let alone issued a final confirmation order. As a result, there is nothing in the record that binds Beneficial to the proposed treatment in the Amended Plan or precludes Beneficial from taking an appeal if the Court were inclined to confirm the Amended Plan.

Under these circumstances, the Court has discretion to consider Beneficial's untimely Amended Plan Objection.[6] Doing so would not unduly prejudice the Debtors since they were aware of Beneficial's objections prior to the confirmation hearing and the substance of the objections is identical to those raised in connection with the Initial Plan.[7] Notwithstanding the lack of prejudice, however, the Court will not consider the Amended Plan Objection. Beneficial had ample notice of the objection deadline and it did not seek an extension of time to

---

[5] See Espinosa, *supra*; see also In re Szostek, 886 F.2d 1405 (3d Cir. 1989).

[6] Beneficial's Amended Plan Objection was undeniably late, and the Court chastised Beneficial on the record for its failure to abide by Court deadlines, but Beneficial did file its Amended Plan Objection prior to the Court's confirmation hearing.

[7] The Debtors were aware of Beneficial's objections to their proposed treatment in the Initial Plan and opted to forgo addressing these objections in the Amended Plan. Nothing in the record should have led the Debtors to conclude that Beneficial would support an amended plan in which the contract interest rate is significantly reduced when the initial attempt to implement this change was rebuffed.

respond.[8]  If Beneficial's Amended Plan Objection were considered, the Court would send a signal that the stated response date is inconsequential.  It would also penalize parties who contentiously adhere to the response dates established by the Court.  For these reasons, the Court must enforce the fixed and mandatory nature of the deadlines set in this case and disregard the Amended Plan Objection.  This does not end the inquiry, however.

In the absence of any objections, the Court has an independent duty to ensure that all facets of a plan comply with the Bankruptcy Code.  See In re Stigliano, 483 B.R. 303, 305 (Bankr. W.D. Pa. 2012) ("'The Court has a duty to examine the plan and determine whether or not the plan conforms to the requirements of *11 U.S.C. § 1129*, regardless of whether objections are filed.'") (quoting In re White, 41 B.R. 227, 229 (Bankr. M.D. Tenn. 1984)); see also In re Mammel, 221 B.R. 238, 239 (Bankr. N.D. Iowa 1998) ("[W]hether or not an objection is presently lodged in this case, the Court retains authority to review this plan and deny confirmation if it fails to comply with the confirmation standards of the Code.").  More importantly, the Debtors bear the burden of proposing a confirmable plan.  Everett v. Perez (In re Perez), 30 F.3d 1209, 1214, n.5 (9th Cir. 1994) ("The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors.").  If the Court cannot conclude that a plan complies with section 1129, then the debtor has not satisfied its burden and the plan cannot be confirmed.

The Court's independent assessment of the Amended Plan yields the conclusion that it violates section 1123(b)(5) by modifying the rights of a creditor whose only collateral is the debtor's principal residence.  The Debtors cannot modify any portion of Beneficial's claim

---

[8]  A review of the record in this case leads the Court to conclude that Beneficial was not prompted to file its Amended Plan Objection until *after* the Debtor filed its *Exparte Motion to Reschedule Plan Confirmation and Disclosure Statement Hearing* [Doc. No. 71] and *after* the Court entered an Order continuing the plan confirmation and disclosure statement hearing [Doc. No. 74].  If the Debtors had not sought a continuance of the confirmation hearing, the Court doubts that any written objection would have been filed.

9

without the creditor's consent, and such consent has not been obtained. By proposing a loan modification prohibited by section 1123(b)(5), the Court concludes that the Amended Plan fails to comply with all applicable provisions of the Bankruptcy Code and therefore it is not confirmable pursuant to section 1129(a)(1).

        A separate Order denying confirmation of the Amended Plan will issue.

Dated: July 23, 2014

                                                   GREGORY L. TADDONIO
                                                   UNITED STATES BANKRUPTCY JUDGE

CC:   Debtors
        Edgardo Santillan, Esq.
        Leslie Rase, Esq.
        Office of the U.S. Trustee